M.K., by and through his Mother    :
and Next Friend, MRS. K.,

                                  :

      Plaintiffs,

                                  :

        vs.                         No. 3:96cv00482(WIG)

                                  :

THEODORE SERGI, et al.,

                                  :

      Defendants.

----------------------------------X

### RULING ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES & COSTS

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(B), provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party."  In the Court's June 9, 2008 ruling on plaintiffs' motion for partial summary judgment, <u>M.K. v. Sergi</u>, 554 F. Supp. 2d 233 (D. Conn. 2008), the Court found that plaintiffs as "prevailing parties" were entitled to an award of costs, including reasonable attorney's fees, under the IDEA against defendant Putnam Board of Education.  The Court invited the parties to submit supplemental briefs addressed primarily to plaintiffs' degree of success.  In response, plaintiffs have filed a supplemental brief.  Defendant Putnam chose to rely on its original submissions.  Having considered plaintiffs' supplemental submission along with the original briefs, the Court

now renders this ruling on the amount of costs, including

reasonable attorney's fees, to be awarded pursuant to §

1415(i)(3)(B).[1]

### Prevailing Market Rate

The Court begins its analysis by determining the hourly rate

to be applied.  As the Second Circuit instructed in Arbor Hill

Concerned Citizens Neighborhood Association v. County of Albany,

522 F.3d 182, 192 (2d Cir. 2008), "[t]he focus of the district

court is no longer on calculating a reasonable fee, but rather on

setting a reasonable hourly rate, taking account of all case-

specific variables."  (Emphasis in original).  See Lillback v.

State of Connecticut Department of Education, No. 3:97cv1202,

2006 WL 752872, at *5 (D. Conn. Mar. 17, 2006).  Under the IDEA,

20 U.S.C. § 1415(i)(3)(C), the hourly rates to be used in

calculating a fee award are the "rates prevailing in the

community in which the action or proceeding arose for the kind

and quality of services furnished."  By statute, no bonus or

multiplier may be applied in calculating the fees awarded under

this subsection.  Id.

The determination of a prevailing rate requires a "case-

specific inquiry into the prevailing market rates for counsel of

---

[1] In its June 9, 2008 decision, the Court discussed at
length the legal standards governing fee awards in IDEA cases.
M.K. v. Sergi, 554 F. Supp. 2d at 242-49.  That portion of its
earlier ruling is incorporated herein by reference.

similar experience and skill to the fee applicant's counsel."
Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d
Cir. 2005).  This inquiry may include taking judicial notice of
the rates awarded in prior cases and the court's own familiarity
with the rates prevailing in the district, but it also requires
evaluating the evidence proffered by the parties.  Id.

Plaintiffs have submitted the affidavits of lead counsel
David Shaw, who describes his 34 years of experience litigating
IDEA cases and other cases involving the rights of disabled
persons in Connecticut, for which work he presently charges an
hourly rate of $400.  They have also provided an affidavit dated
June 25, 2008, of Attorney John Yavis, a 1961 Yale Law School
graduate who has been practicing in Connecticut for 47 years,
principally in the area of complex litigation.  Attorney Yavis
states that the prevailing rates charged by Connecticut law firms
in complex civil litigation and related administrative
proceedings for attorneys with more than thirty years of
experience range from $400 to $450 per hour.  Plaintiffs had
previously submitted affidavits from Attorney Francis J. Brady, a
1973 graduate from George Washington University Law School, who
has been practicing in Connecticut for 34 years, and who states
that, as of January 2006, the prevailing hourly rates charged by
Connecticut-based law firms for complex litigation for an
attorney with thirty years of experience ranged from $385 to

3

$415.  Putnam has not provided any evidence to counter these
affidavits.

       Additionally, the Court has reviewed fee awards in other
recently reported cases in this district.  In 2005, Judge
Arterton awarded attorney's fees at the rate of $400 per hour to
an experienced attorney with substantial experience in antitrust
and patent litigation, noting that prior thereto, in 2000, 2003,
and 2005, judges in this district had awarded fees at hourly
rates of $350 to $375 to experienced lawyers in complex civil
litigation cases.  Sony Electronics, Inc. v. Soundview
Technologies, Inc., 389 F. Supp. 2d 443, 448 (D. Conn. 2005).
In 2006, Magistrate Judge Fitzsimmons awarded fees based on rates
as high as $391.48/hour for an experienced litigation partner in
a complex breach of contract action.  Rand-Whitney Containerboard
v. Town of Montville, No. 3:96cv413, 2006 WL 2839236, at *11 (D.
Conn. Sept. 5, 2006).[2]  That same month, Judge Chatigny awarded
fees in an IDEA case at the rate of $315/hour for Attorney Shaw,
noting that this rate was in accord with other fee awards in IDEA
cases in the Second Circuit.  C.C. v. Granby Board of Educ., 453
F. Supp. 2d 569, 574 (D. Conn. 2006) (citing A.R. v. New York
City Dep't of Educ., 407 F.3d 65, 82 (2d Cir. 2005) (approving a

_____

       [2]  In her review of historic fee awards in this district,
Judge Fitzsimmons noted that the highest rate awarded prior to
her decision was in the Sony Electronics case.  2006 WL 2839236,
at *10.

2002 fee award in an IDEA case in the Southern District of New York at rates of $300 to $350/hour)). More recently, Judge Thompson awarded fees in another IDEA case, <u>P. v. Newington Board of Education</u>, 512 F. Supp. 2d 89, 166 (D. Conn. 2007), also at the rate of $315/hour for Attorney Shaw. Judge Nevas, in <u>Connecticut Housing Finance Authority v. Eno Farms Limited Partnership</u>, No. 3:07cv319, 2007 WL 1670130, at *5 (D. Conn. June 6 2007), approved an award of fees at a rate of $350/hour for an attorney with fifteen years experience. In <u>Tolnay v. Wearing</u>, No. 3:02cv1514, 2007 WL 2727543, at *2 (D. Conn. Sept. 19, 2007), Judge Burns used a rate of $350/hour for a fee award for two experienced civil rights attorneys, and in <u>Mikrut v. Unum Life Ins. Co. of Am.</u>, 3:03cv1714, 2007 WL 2874801, at *4 (D. Conn. Sept. 28, 2007), Judge Underhill awarded fees at the same rate of $350/hour to an experienced litigator in a case that he described as "not complex, novel or intellectually difficult." In 2008, in <u>Pappas v. Watson Wyatt & Co.</u>, 3:04cv304, 2008 WL 45385, at *3 (D. Conn. Jan. 2, 2008), Judge Burns based her fee award for a civil rights attorney with over twenty years of experience on the rate of $400/hour. And, in an IDEA case, <u>Bolling v. Board of Education of Ansonia</u>, No. 3:07cv1593, 2008 WL 349765, at *3 (D. Conn. Feb. 6, 2008), Judge Hall used an hourly rate of $350 for an attorney whom she described as not an expert in civil rights litigation and, therefore, someone who should not command a fee

at the highest end of the spectrum for experienced civil rights attorneys in Connecticut.

Having reviewed the affidavits submitted by plaintiffs, as well as the trend in hourly rates awarded in this district particularly in IDEA cases, and taking into account the novelty and complexity of IDEA litigation, the length of Attorney Shaw's involvement in this case, his undisputed expertise in this area of practice, and heeding the admonition of the Second Circuit that attorney's fees are to be awarded with an "eye to moderation," New York State Assoc. for Retarded Children v. Carey, 711 F.2d 1136, 1139 (2d Cir. 1983), the Court finds that a reasonable, prevailing market rate in this district for the kind and quality of services provided by Attorney Shaw is $375/hour. See M.K. v. Sergi, 554 F. Supp. 2d at 246-47 & n.5 (discussing the factors that should be considered and citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92-93 (1989)).

Additionally, plaintiffs seek to recover fees for a portion of the work performed by a paralegal at the rate of $100/hour. Attorney Yavis has testified in his affidavit that the prevailing rates in Connecticut for paralegal assistants range from $100 to $250 per hour. Plaintiffs' requested fee falls at the bottom of this range. Defendant has not provided any counter affidavits.

6

The Court finds that $100/hour for paralegal work is a reasonable prevailing rate in this district.  See Mikrut, 2007 WL 2874801, at *5 (awarding fees with a paralegal rate of $100/hour).

## Reasonable Hours

The Court must next determine the number of hours for which fees will be awarded.  In that regard, the Court has carefully scrutinized the time records submitted to insure that the time was "usefully and reasonably expended," see Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994), and to eliminate hours that appear excessive, redundant, or otherwise unnecessary.  See Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998). Where appropriate, the Court has also reduced the requested hours to reflect plaintiffs' degree of success.  As the Supreme Court held in Hensley v. Eckerhart, 461 U.S. 424, 435 (1983), it is not necessary for a plaintiff to have prevailed on every contention raised in a lawsuit to receive a fully compensatory fee.  But, if the plaintiff has achieved only partial or limited success, as in this case, even where the claims are interrelated, non-frivolous, and raised in good faith, the Court has the discretion to reduce the award to account for the plaintiff's limited success.  Id. at 436-37.

Additionally, the IDEA provides, in relevant part, that the court must reduce the amount of attorney's fees awarded if it finds that the parent unreasonably protracted the final

7

resolution of the controversy, 20 U.S.C. § 1415(i)(3)(F)(i); the amount of attorney's fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience, 20 U.S.C. § 1415(i)(3)(F)(ii); the time spent and legal services furnished were excessive considering the nature of the action, 20 U.S.C. § 1415(i)(3)(F)(iii); or the attorney representing the parent did not provide to the school district the appropriate information in the due process complaint. 20 U.S.C. § 1415(i)(3)(F)(iv).

Plaintiffs' counsel originally requested a fee award for 1341.9 hours of work.[3] He has now reduced the number of requested hours to 753.9 (a reduction of approximately 44%), resulting in a total fee request of $301,560.00, plus paralegal fees of $350.00. His requested hours are broken down into the following categories:

1. The First Administrative Hearing (1/4/95 - 2/29/96)

Plaintiffs seek full compensation for the 116.9 hours spent by counsel preparing for and litigating the first IDEA administrative hearing and providing advice to the client.

---

[3] Originally, plaintiffs also requested as part of the fee award compensation for approximately 100 hours of work performed by two other attorneys. Plaintiffs are no longer seeking an award for the legal services performed by these attorneys and, therefore, the Court has not addressed an appropriate hourly rate for their services nor has it considered their time records.

Putnam responds that plaintiffs did not prevail on any significant issue in Case No. 95-353 as to the Putnam defendants and, therefore, they are not entitled to any fees with respect to that hearing.

As the Court discussed in its earlier ruling, although plaintiffs did not prevail on every issue, they did prevail on a substantial number of substantive issues as a result of the first administrative hearing, which success effected a significant alteration in their relationship with Putnam.  M.K., 554 F. Supp. 2d at 244-45.  At the first administrative hearing, the issues presented were:

> (1) Is Putnam and/or the Department of Children and Families ("DCF") responsible for providing services to M.K. in the home, school, and community such as (although not limited to) an in-home mentor, 24-hour on-call crisis response personnel and crisis plan, case management, inter-agency family team, respite care, and individual and family therapy?
>
> (2) Does a hearing officer have jurisdiction over DCF with respect to the provision of such services?
>
> (3) Did Putnam provide M.K. with a free appropriate public education ("FAPE") in the least restrictive environment?

(Final Decision and Order in Case No. 95-353 at 1.)  The Hearing Officer found that Putnam did not supply sufficient supplementary

aids and services with regard to M.K.'s behavior to consistently maintain him in the least restrictive environment. (Concl. of Law ¶ 3.) She found that Putnam did not always follow the expert advice that it received (id. at ¶ 5), and that the time-out room was over-used, which did not deter poor conduct by M.K. (Id. at ¶ 6.) The Hearing Officer ordered a consultant, Dr. Williams, to develop a behavioral management plan to be implemented at home and at school and to provide training to M.K.'s teachers, paraprofessionals, and his family. (Id. at ¶ 7; Decision & Order at ¶ 3.) She found that Putnam never implemented any parent counseling and/or training. *(*Concl. of Law at ¶ 8.) She further found that M.K.'s individualized education program ("IEP"), except for the addition of a paraprofessional to provide behavioral support in the regular classroom, never changed to address his deteriorating behavior. (Id. at ¶ 9.) She ordered Putnam to re-assign a full-time paraprofessional to M.K.'s classroom upon his return to provide behaviorial support, and to hire an educational consultant to assist the Planning and Placement Team ("PPT") in developing an appropriate IEP and to provide training and consultation to staff and to monitor the implementation of all components of M.K.'s educational program. (Decision & Order at ¶¶ 5 & 6.) She found that the PPT never received any ongoing expert advice as to M.K.'s medications and psychiatric condition, and ordered M.K.'s psychiatrist to serve

as a clinical advisor to the PPT.  (Concl. of Law at ¶ 10; Decision & Order ¶ 4.)

On the other hand, she found that a 24-hour crisis plan with an on-call person for family support, respite care for the family, and an in-home mentor, requested by plaintiffs, were not "related services" for which Putnam bore responsibility.  (Id. at ¶ 23.)  She also found that she had limited jurisdiction over DCF, but since DCF was acting as M.K.'s local education agaency ("LEA") at the time of the hearing, she ordered DCF to cooperate and provide input to the PPT in planning for M.K.'s transition back into the Putnam schools.  (Id. at ¶¶ 24-26; Decision & Order at ¶ 1.)

The Court finds that, based on their degree of success, plaintiffs are entitled to an award of 80% of the requested hours for this period of time, or 93.52 hours.  The Court has reviewed the time entries and, while they do not provide significant detail concerning the specific work performed, given the Court's familiarity with this case and the administrative proceedings, the Court is convinced that all of the services and time expended were reasonable and necessary.

2.  Time Spent Implementing the Hearing Officer's Decision & Providing Advice to the Family (3/7/96 - 3/8/96, 3/21/96 - 3/28/96, 5/22/96)

In March and May, 1996, Attorney Shaw spent 7.00 hours

providing advice to the family and attempting to secure
implementation of the Hearing Officer's decision.  Since
virtually all of the relief ordered by the Hearing Officer
pertained to Putnam, the Court finds that these hours are fully
compensable.

### 3.  Initial Federal Court Litigation (3/8/96 - 3/19/96)

Plaintiffs next seek to recover for 66.5 hours spent
preparing a complaint, application for temporary restraining
order ("TRO"), motion for preliminary injunction and supporting
memorandum.  As plaintiffs note, their degree of success on this
first federal complaint was limited, but the filing of the
complaint was necessary to pursue their claim for costs and fees.
Plaintiffs did not prevail on their motion for a TRO or
preliminary injunction.   While the filing of the complaint may
have been essential to the recovery of fees and costs, that claim
was only one of many counts, and plaintiffs were unsuccessful on
almost every other claim.  Accordingly, the Court will disallow
the time spent on the TRO and preliminary injunction (28.5), but
will allow 50% of the time spent on the federal complaint (38.0),
or 19.00 hours.

### 4.  Advice to M.K. and Their Advocate (8/29/96 - 8/27/02)

Plaintiffs' counsel concedes that during the period May 15,
1996 through March 13, 2003, he spent a significant amount of
time pursuing claims that were not successful and he has

12

eliminated over 430 hours from his fee request. He seeks to
recover for 97.70 hours for providing advice to the family and
their advocate, Mr. Garrison, regarding M.K.'s placement, his
transfer back to Putnam, and for some of his work on the federal
lawsuit, including preparing the 26(f) Report, participating in
and preparing reports relating to status and pretrial conferences
with the Court, participating in a settlement agreement and
preparing related documents, and preparing the amended complaint
and related motions. It appears that plaintiffs' counsel has
been very fair in cutting his requested hours during this six-
year time period and is now seeking to recover for only 18.5% of
his time during this period, or an average of approximately 16
hours per year. The Court finds that this time was reasonable
and necessary and will award fees for the requested hours, 97.70.

5. Second IDEA Hearing (3/13/03 - 8/27/03)

Plaintiffs next seek an award of fees for the 195.2 hours
that Attorney Shaw spent litigating the second IDEA hearing.
Again, this is an issue that the Court has addressed at some
length in its earlier ruling. M.K., 554 F. Supp. 2d at 245-46.

Plaintiffs were less successful at the second administrative
hearing. Nevertheless, they prevailed on a substantial number of
issues, particularly with respect to those involving transition
services. The issues before the Hearing Officer were:

(1) Is M.K. eligible for services under the IDEA?

13

(2) Did the May 11, 2001 IEP provide M.K. with a FAPE?

(3) Did Putnam provide M.K. with appropriate transition services?

(4) Is Putnam responsible for paying for M.K.'s foster placement, therapy, and other support services provided by DCF?

(Final Decision & Order, Case No. 03-087, at 1.)

As the Hearing Officer's decision reflects, on the opening day of the hearing, Putnam reported that it was no longer contesting M.K.'s eligibility to receive special education services under the IDEA, thus rendering moot the first issue. However, that does not diminish plaintiffs' entitlement to recover for a substantial portion of the time spent by their attorney prior to the hearing, which was 91.9 hours.

With respect to the other issues, the Hearing Officer found that Putnam had not provided the appropriate transition services that M.K. required to move from high school to post-high school life and ordered Putnam to provide these services for a period of time to be determined by an independent consultant hired by Putnam, but at least through the 2003-04 school year. (Concl. of Law at ¶ 8; Final Decision & Order at ¶ 7.) She further held that the May 11, 2001 IEP was incomplete both as to his goals and his transition needs. (Concl. of Law at ¶ 10; Final Decision & Order at ¶ 2.) She ordered Putnam to provide psychiatric support

for M.K.'s medication regime (which decision this Court has overruled), to pay for ongoing therapy, and to hire an independent consultant to oversee the creation and implementation of an IEP that contained appropriate transition plans and goals. (Concl. of Law at ¶¶ 11 & 12; Final Decision & Order at ¶¶ 3-5.)

On the other hand, plaintiffs were not successful on some fairly significant issues. The Hearing Officer denied plaintiffs' request for Putnam to pay for M.K.'s foster home, which finding this Court has affirmed. (Id. at ¶ 13.) She also denied the parents' request that she order Putnam to hold them harmless from any claim asserted by the State for services provided by DCF, which decision this Court also upheld. (Id. at ¶ 19.) Lastly, she declined to issue an order prohibiting DCF from terminating services that it was providing to M.K., except as otherwise set forth in her order. (Id. at ¶ 20.)

Based on their degree of success at the administrative hearing, the Court will award fees for 75% of the hours spent prior to the hearing (91.9 hours X .75 = 68.925 hours) and 50% of the hours spent during and after the hearing (103.3 hours X .50 = 51.65 hours), which results in an award of 120.575. hours. Again, the Court has carefully reviewed Attorney Shaw's billing entries and, although they do not provide the detailed explanation that the Court would like to see, based on the extensive chronology of M.K.'s special education services that

15

has been presented repeatedly to the Court in the motions for summary judgment, the Court has no difficulty in concluding that all of this time (as reduced to reflect plaintiffs' degree of success) was reasonable and necessary to the prosecution of plaintiffs' claims at the administrative level.

6.  Federal Litigation (8/27/03 - 7/20/04)

From August 2003 to July 2004, plaintiffs' counsel spent 29.30 hours preparing a complaint, which included a claim for attorney's fees and costs related to the second administrative hearing, filing a complaint with the Connecticut State Department of Education regarding enforcement of the hearing decision, participating in status conferences, preparing various motions, and providing advice to the client.  While not all of these time entries relate wholly to the matters on which plaintiffs were successful, notably plaintiffs' counsel has deleted approximately 37 hours, some of which appear to be partially related to the matters on which plaintiffs were successful.  The Court finds that the overall division of hours is a fair allocation of time spent relating to matters on which plaintiffs were successful and will allow plaintiffs to recover fees for the 29.30 hours of work performed during this period.

7.  Plaintiffs' Motion for Summary Judgment (7/22/04 - 8/17/04)

Plaintiffs next seek an award of fees for a "reasonable portion" of the 93.10 hours spent preparing the motion for

summary judgment against the Putnam defendants.  Based on plaintiffs' limited success on this motion, the Court will allow plaintiffs to recover for 33% of this time, or 30.72 hours.

## 8.  Plaintiffs' Response to Putnam's Motion for Summary Judgment (8/25/04 - 11/12/04)

Plaintiffs' counsel spent 109.30 hours responding to Putnam's motion for summary judgment and related motions.  Time spent responding to other defendants' motions has been eliminated.  They argue that "a portion" of this effort should be compensated, as well as the 3.50 hours spent by the paralegal. The Court will again allow recovery for 33% of this time based upon plaintiffs' limited success, or 36.07 hours for Attorney Shaw and 1.20 hours for his paralegal.

## 9.  Plaintiffs' Reply Brief (11/17/04 - 7/8/05)

Plaintiffs seek to recover for the 22.70 hours that their counsel spent preparing a reply brief, as well as three supplemental motions updating their fee request.  The Court will allow 80% of the requested hours or 18.16 hours.

## 10.  Supplemental Memorandum (6/9/08 - 6/26/08)

Most recently, plaintiffs' counsel spent 16.20 hours preparing a supplemental memorandum.  These hours are fully compensable.

## **Total Fee Award**

The total hours which the Court finds to have reasonably

expended by Attorney Shaw over the twelve-year course of this litigation, including the two administrative hearings and filing two separate federal lawsuits, adjusted for plaintiffs' degree of success, is 468.245 hours.  Applying the rate of $375/hour, yields a total fee award for Attorney Shaw of $175,591.88.  Plaintiffs may also recover for 1.2 hours of paralegal time at $100/hour or $120.  Thus the total fee award is $175,711.88.

## Costs

Additionally, plaintiffs seek to recover $11,248.29 in costs.  They have deducted from their original request $6,250.00 in expert witness fees.  See Arlington Central School District Board of Educ. v. Murphy, 548 U.S. 291 (2006) (holding that non-attorney expert's fees are not recoverable "costs" under the IDEA's fee-shifting provision, 20 U.S.C. § 1415(i)(3)(B)).  Putnam has objected only to the requested costs for electronic research.

In the Arlington Central School District case, the Supreme Court held that the term "costs," as used in 20 U.S.C. § 1415(i)(3)(B), refers to the list of costs set forth in 28 U.S.C. § 1920, the general statute governing the taxation of costs in federal court.  548 U.S. at 297-98.  The Court cited its earlier decision in Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 439 (1987), for the proposition that Fed. R. Civ. P. 54(d) does not give a district judge the "discretion to tax whatever

costs may seem appropriate." Rather, the Court held, the term "costs" is defined by the list set forth in § 1920. Id.

Additionally, this Court has ruled in at least two IDEA cases that the principles enunciated by the Second Circuit in LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998), control as to out-of-pocket expenses that are not expert witness fees. See C.C. v. Granby Board of Education, 453 F. Supp. 2d at 576 n.5 (distinguishing other out-of-pocket expenses from expert witness fees discusssed in the Arlington School Board case); P. v. Newington Board of Education, 512 F. Supp. 2d at 116 (citing LeBlanc-Sternberg, 143 F.3d at 763, for the proposition that prevailing parties can be reimbursed for "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients"). In LeBlanc-Sternberg, the Second Circuit held that an attorney's fee award includes those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients. 143 F.3d at 763 (citing United States Football League v. National Football League, 887 F.2d 408, 416 (2d Cir. 1989)). The Court drew a distinction between costs that are non-recoverable routine office overhead and out-of-pocket. Id.

The costs which plaintiffs seek to recover include the following:

(1) Court filing fees - $270.00: These are recoverable in full. See 28 U.S.C. § 1920(1); D. Conn. L. Civ. R. 54(c)(1).

(2) Marshals' fees for serving the complaints - $954.16:
These are recoverable in full.  See 28 U.S.C. §§ 1920(1) & 1921;
D. Conn. L. Civ. R. 54(c)(1).

(3) Service of deposition subpoenas - $279.50: These are
fully recoverable.  See P. v. Newington Board of Education, 512
F. Supp. 2d at 116.

(4) Photocopying Charges - $650.25: These are recoverable
under § 1920(4) and as reasonable out-of-pocket expenses incurred
by attorneys and ordinarily charged to their clients.  See 28
U.S.C. § 1920(4); LeBlanc-Sternberg, 143 F.3d at 763.

(5) Federal Express Charges - $194.51: In C.C. v. Granby
Board of Education, 453 F. Supp. 2d at 576, the Court held that
while Federal Express charges did not fall within the enumerated
categories of taxable costs under § 1920 or Local Rule 54, they
were "reasonable out-of-pocket expenses incurred by attorneys and
ordinarily and charged to their clients," and thus were
recoverable as part of an attorney's fee award.  See LeBlanc-
Sternberg, 143 F.3d at 763.

(6) Court Reporter Fees - $3,874.54: Under § 1920(2), court
reporter fees may be taxed as costs for all or any part of the
stenographic transcript necessarily obtained for use in the case.
It appears to the Court that these deposition transcripts were
necessary to this case and defendant does not claim otherwise.
The Court will allow plaintiffs to recover these costs.

(7) Postage and UPS Fees - $31.35: These will be allowed as reasonable out-of-pocket expenses normally charged to the client.

(8) Investigator Fees - $879.80: Plaintiffs have not provided a sufficient explanation for this charge. The Court will not allow it.

(9) Telephone Fees - $91.88: These are out-of-pocket expenses normally charged to the client, which the Court will allow.

(10) Lexis Nexis Research - $3,891.00: In 1996, the Second Circuit in United States ex rel. Evergreen Pipeline Construction Co. v. Merritt Meridian Construction Corp., 95 F.3d 153, 173 (2d Cir. 1996), held that "computer research is merely a substitute of an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost." However, five years later, the Court recognized that the costs for electronic legal research may properly be included in a fee award, since they likely reduce the number of hours required for an attorney to perform manual research, thereby lowering the lodestar. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 97-98 (2d Cir. 2004). It is not clear to the Court whether in this case the use of Lexis-Nexis research decreased the number of hours that Attorney Shaw spent performing legal research. The Court does note, however, that this district has allowed recovery for computerized legal

research in a number of cases since the 2004 <u>Arbor Hill</u> decision. <u>See</u> <u>Pappas v. Watson Wyatt & Co.</u>, No. 3:04cv304, 2008 WL 45385, at *9 (D. Conn. Jan. 2, 2008); <u>Rand-Whitney Containerboard v.</u> <u>Town of Montville</u>, 2006 WL 2839236, at *24 (Sept. 5, 2006); <u>see</u> <u>also</u> <u>Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC</u>, 549 F. Supp. 2d 274, 286-87 (E.D.N.Y. 2008); <u>but see</u> <u>Blumenschine v.</u> <u>Professional Media Group, LLC</u>, No. 3:02cv2244, 2007 WL 988192, at *22 (D. Conn. Mar. 30, 2007)(disallowing Westlaw costs pursuant to D. Conn. L. Civ. R. 54(c)(7)(xi)).   The cases cited by Putnam pre-date the Second Circuit's decision in <u>Arbor Hill</u>.

Accordingly, the Court will allow a portion of these costs. Since the theory behind allowing recovery for the costs of electronic research is that they presumably have reduced the lodestar award, and since the Court has reduced the requested lodestar award by 65.1% from the total hours originally requested, the Court will reduce the costs for electronic research by this same percentage.  Thus, the Court will award $1,357.57 in costs for computerized legal research.

<u>(11) Board of Education Records - $131.72</u>: This cost is clearly recoverable under 28 U.S.C. § 1920(4).

## Conclusion

To summarize, the Court awards the following costs pursuant to 20 U.S.C. § 1415(i)(3)(B):

Attorney's Fees for Attorney Shaw:     $175,591.88

| | |
|---|---|
| Paralegal Fees: | 120.00 |
| Court Filing Fees: | 270.00 |
| Marshals' Fees - Service of Complaints: | 954.16 |
| Marshals' Fees - Service of Subpoenas: | 279.50 |
| Photocopies: | 650.25 |
| Federal Express: | 194.51 |
| Court Reporter Fees: | 3,874.54 |
| Postage: | 31.35 |
| Investigator: | -0- |
| Telephone: | 91.88 |
| Computer Research: | 1,357.57 |
| Board of Education Records: | 131.72 |
| TOTAL: | $183,547.36 |

## Conclusion

For the reasons set forth in this Ruling as well as the prior ruling of this Court on plaintiffs' motion for partial summary judgment, M.K. v. Sergi, 554 F. Supp. 2d 233 (D. Conn. 2008), the Court awards plaintiffs costs, including reasonable attorney's fees, in the amount $183,547.36, against defendant Putnam Board of Education. This award pertains to Consolidated Cases, M.K. v. Sergi, No. 3:96cv482(WIG), and M.K. v. Sergi, Case No. 3:03cv1505. The Clerk should enter judgment in this amount in favor of plaintiffs and against Putnam Board of Education. All other claims of plaintiffs against this defendant and the

remaining defendants have been dismissed.

SO ORDERED, this ___25th___ day of September, 2008, at

Bridgeport, Connecticut.


___/s/ William I. Garfinkel_____
WILLIAM I. GARFINKEL
United States Magistrate Judge